[Cite as *State v. Leigh*, 2017-Ohio-7105.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                                    Court of Appeals No. OT-16-028

      Appellee                                              Trial Court No. 16 CR 010

v.

Gregory S. Leigh, Sr.                                    **DECISION AND JUDGMENT**

      Appellant                                             Decided:  August 4, 2017

* * * * *

James J. VanEerten, Ottawa County Prosecuting Attorney, and
Dina Shenker, Assistant Prosecuting Attorney, for appellee.

Loretta Riddle, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Gregory Leigh Sr., appeals the October 16, 2016

judgment of the Ottawa County Court of Common Pleas sentencing him for a conviction

of domestic violence.  For the reasons that follow, we affirm.

## I. Background

{¶ 2} On January 27, 2016, Leigh was indicted on one count of domestic violence against his then-girlfriend, S.M., in violation of R.C. 2919.25(A) and (D)(4), a third-degree felony. His case went to trial on August 30, 2016, and the jury found Leigh guilty. On October 16, 2016, the trial court sentenced Leigh to 30 months in prison.

{¶ 3} The incident that gave rise to the domestic violence charge occurred on September 26, 2015. The victim, S.M., testified at trial. According to S.M., she and Leigh were living and working together at a motel in Port Clinton. Sometime that day they got into an argument in their motel room. While they were arguing, she slammed the television remote on a table and broke the back of it. When Leigh saw that she broke the remote, he became angrier, grabbed her by the throat, and then pushed her against the wall. Leigh eventually let her go. S.M. then tried to get dressed. While she was looking for her pants, Leigh grabbed her by her shirt and threw her on the bed. S.M. testified that Leigh left the motel after throwing her on the bed. At the time, she had several scratches on her neck and chest from Leigh grabbing her throat and shirt during the argument.

{¶ 4} Immediately after the incident, S.M. left the room and went to the manager's office to call 911. Deputy Kevin Meek of the Ottawa County Sheriff's Department responded to S.M.'s 911 call. S.M. told him what happened, and the officer took photographs of the scratches on her neck and chest. S.M. identified those photographs at trial. S.M. said that the officer asked her to make a written statement against Leigh, but she refused. S.M. refused to make a statement because she "just wanted [Leigh] to go"

2.

and because she was afraid of Leigh at that time. She testified, however, that she was no longer afraid of him and she remained in a relationship with him. They continued to live together until January 2016 when Leigh was arrested for domestic violence for the September 26 incident.

{¶ 5} Deputy Meek also testified at trial. He said that he found S.M. in the lobby area of the motel. He observed that she had red marks on her neck and was visibly upset. Deputy Meek said that S.M. told him the following story, which was generally consistent with S.M.'s testimony at trial: Leigh and S.M. started arguing after Leigh called her lazy; S.M. slammed and threw the television remote and Leigh knocked items off the microwave; Leigh grabbed her by the throat and pushed her against the wall; when Leigh let her go she tried to put on pants; Leigh then grabbed her by the throat and pushed her on the bed; and S.M. later left the motel room and called 911 from the manager's office. Deputy Meek identified the photographs that he took of S.M.'s neck and chest. He opined that the locations of the scratch marks in those areas were consistent with someone being grabbed the way S.M. described. He said that he asked S.M. to provide a written statement, but she refused.

{¶ 6} Leigh testified and provided a different version of events. Leigh stated that the issues between he and S.M. started around 8:00 a.m. on September 26 when Leigh learned that the motel manager refused to pay them for trimming some hedges on the motel property. Leigh and the manager got into an argument about the payment. The manager fired Leigh and S.M., and then demanded that they vacate their motel room.

3.

Leigh contacted the motel owner who said that he would speak to the manager and told Leigh that they could stay in their room. Leigh returned to the room and told S.M. about his conversations with the manager and the owner. Leigh claimed that he and S.M. then engaged in rough sex; he was adamant that the marks on S.M.'s neck and chest happened during sex and were not related to any type of domestic violence. Leigh denied ever holding S.M. against a wall by her throat.

{¶ 7} Leigh testified that the motel manager came to the door shortly after Leigh and S.M. had sex and asked them to do some work around the property. Leigh and the manager began arguing again. Leigh claimed that the manager—not he—called S.M. lazy. Leigh told the manager that he and S.M. would begin working soon. The manager left and the couple began bickering. Leigh knocked some plates off of the microwave out of frustration, and this caused S.M. to become increasingly angry. S.M. then slammed the television remote on the table and broke it. After that happened, Leigh left the motel because he did not want to do something that he would later regret. He claimed that he left sometime between 11:00 a.m. and 11:30 a.m. to walk to a nearby store to buy cigarettes. He called his brother to come pick him up.

{¶ 8} Leigh said that S.M. lied on the stand, S.M.'s version of events was untrue, and S.M. called the police because she was concerned about Leigh doing something unsafe after he left the motel. He also said that S.M. knew "what to say to get somebody removed from the property" and that she told the police that Leigh had hurt her "to protect" him.

4.

**{¶ 9}** After Leigh testified, the state called Deputy Meek again to testify in rebuttal. He testified that Leigh's version of the story did not make sense to him. He claimed that Leigh's account did not adequately explain why S.M. called 911. He also claimed that he arrived at the motel only seven minutes after the 911 call came in and the marks on S.M.'s body appeared fresh. When asked about S.M.'s demeanor, Deputy Meek said that S.M. seemed "truthful," was "visually upset over the whole incident," and "appeared to have been crying."

**{¶ 10}** Leigh appeals the trial court's judgment, asserting three assignments of error:

> ASSIGNMENT OF ERROR NO. I
>
> APPELLANT'S DUE PROCESS RIGHTS AND RIGHT TO A FAIR TRIAL WERE VIOLATED WHEN HIS PRIOR DOMESTIC VIOLENCE CONVICTIONS WERE ADMITTED AT TRIAL[.]
>
> ASSIGNMENT OF ERROR NO. II
>
> APPELLANT'S CONSTITUTIONAL RIGHT TO REMAIN SILENT WAS VIOLATED WHEN HE TESTIFIED WITHOUT THE COURT GOING OVER THAT RIGHT WITH DEFENDANT AND INSURING HE KNOWINGLY, INTELIGENTLY [sic] AND VOLUNTARILY WAIVED THAT RIGHT BEOFRE [sic] TAKING THE STAND.

ASSIGNMENT OF ERROR NO. III

APPELLANT RECEIVED CONSTITUTIONALLY

INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL

COUNSEL COMMITTED SUCH ERRORS AS ALLOWING

TESTIMONY OF AN OFFICER BOLSTERING THE TESTIMONY OF

THE VICTIM AND EVIDENCE OF APPELLANT'S PRIOR DOMESTIC

VIOLENCE CONVICTIONS.

## II. Law and Analysis

### A. Admission of Prior Domestic Violence Convictions

{¶ 11} In his first assignment of error, Leigh contends that he was deprived of a fair trial because the trial court allowed his two prior domestic violence convictions to be admitted into evidence. Leigh argues that his prior domestic violence convictions were inadmissible "other acts" under Evid. R. 404(B), which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," and because evidence of his prior domestic violence convictions was unduly prejudicial under Evid. R. 403. The state counters that the prior convictions were properly admitted to prove an essential element of third-degree felony domestic violence under R.C. 2919.25(A) and (D)(4), which requires proof that the defendant pleaded guilty to or was convicted of two or more offenses of domestic violence. We agree with the state.

{¶ 12} "[T]he admission of evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (2001). Our inquiry is limited to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably. *Id.*, citing *State v. Barnes*, 94 Ohio St.3d 21, 23, 759 N.E.2d 1240 (2002).

{¶ 13} Under R.C. 2919.25(A), "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." Generally, a violation of that section is a first-degree misdemeanor. R.C. 2919.25(D)(2). If, however, the defendant previously pleaded guilty to or was convicted of two or more offenses of domestic violence, a violation of R.C. 2919.25(A) is a third-degree felony. R.C. 2919.25(D)(4). When a prior conviction elevates the degree of an offense—for example, where a prior conviction makes the offense a third-degree felony instead of a first-degree misdemeanor—the prior conviction is an essential element of the crime that the state must prove beyond a reasonable doubt. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 90; *State v. Torres*, 6th Dist. Wood No. WD-98-049, 1999 Ohio App. LEXIS 1408, 7-8 (Mar. 31, 1999).

{¶ 14} Here, Leigh was charged with third-degree felony domestic violence under R.C. 2919.25(A) and (D)(4), making proof of his prior convictions an essential element of the state's case. Because Leigh's prior convictions are elements of the crime, they are

7.

not "other acts" evidence under Evid.R. 404(B). *State v. Spaulding*, Slip Opinion No. 2016-Ohio-8126, ¶ 118; *Torres* at 7-8. Accordingly, the trial court acted within its discretion by admitting Leigh's prior domestic violence convictions into evidence. We find, therefore, that Leigh's first assignment of error is not well-taken.

### B. Right to Remain Silent

{¶ 15} In his second assignment of error, Leigh claims that his Fifth Amendment right to remain silent was violated when the trial court did not discuss this right with him before he took the stand. More specifically, Leigh argues that the trial court was required to ensure that Leigh knowingly, intelligently, and voluntarily waived his Fifth Amendment rights before he testified in his own defense. The state asserts that Leigh had adequate time to consult with counsel and, in any event, the trial court sufficiently advised Leigh of his right to remain silent when it told prospective jurors during voir dire (with Leigh present) that Leigh was not required to testify.

{¶ 16} A defendant's right to testify or not testify on his own behalf is a personal right that only the defendant can waive. *State v. Bey*, 85 Ohio St.3d 487, 499, 709 N.E.2d 484 (1999). Despite the importance of this right, "a trial court is not *required* to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." (Emphasis in original.) *Id.*; *State v. Seibert*, 6th Dist. Wood No. WD-02-017, 2003-Ohio-3107, ¶ 10. Because a trial court is not required to conduct any type of colloquy with the defendant regarding his decision to testify, a court's failure to do so is not error. *Bey* at 500.

8.

{¶ 17} Accordingly, the trial court was under no obligation to inform Leigh of his right to remain silent, nor was the trial court required to ensure that he was knowingly, voluntarily, and intelligently waiving that right before he testified on his own behalf. We find that Leigh's second assignment of error is not well-taken.

### C. Ineffective Assistance of Counsel

{¶ 18} In his third assignment of error, Leigh argues that his trial attorneys were ineffective for two reasons: (1) they did not move to exclude or bifurcate Leigh's prior domestic violence convictions, and (2) they did not object to Deputy Meek's testimony that S.M. "seemed truthful." In response, the state argues that counsel was not ineffective because (1) Leigh's prior convictions were an essential element of third-degree felony domestic violence, and (2) Deputy Meek's statement was appropriate because it was offered in rebuttal to Leigh's testimony.

{¶ 19} Properly licensed Ohio lawyers are presumed to be competent. *State v. Gondor,* 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have

9.

been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-88. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002). As recognized in *Strickland,* there are "countless ways to provide effective assistance in any given case," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 689; *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

### 1. Prior Convictions

{¶ 20} Leigh first argues that his attorneys were ineffective for not moving to exclude or bifurcate his prior domestic violence convictions.

{¶ 21} As we discussed above, the state needed to establish Leigh's prior convictions of domestic violence to prove that Leigh committed third-degree felony domestic violence against S.M. Thus, the convictions were admissible and could not be bifurcated from the rest of the state's case against Leigh. *Spaulding*, Slip Opinion No. 2016-Ohio-8126, ¶ 118; *Torres*, 6th Dist. Wood No. WD-98-049, 1999 Ohio App. LEXIS 1408, at 7-8.

{¶ 22} Moreover, when counsel acts on reasonable tactical strategies, a defendant cannot claim ineffective assistance. *State v. Clayton*, 62 Ohio St.2d 45, 47, 402 N.E.2d 1189 (1980). In this case, defense counsel stipulated to the admission of Leigh's prior convictions "so the deputy won't have to take the stand and reiterate." Defense counsel therefore prevented the jury from hearing the details of the prior convictions, which were

10.

not relevant to the case and had the potential to be unduly prejudicial. We find this to be a matter of trial strategy and not ineffective assistance.

## 2. Deputy Meek's Rebuttal Testimony

{¶ 23} Leigh also argues that his attorneys were ineffective because they failed to object to Deputy Meek's rebuttal testimony that S.M. "seemed truthful." He contends that this constituted improper bolstering of S.M.'s veracity. While we agree that Deputy Meek's statement was not properly admissible, we do not agree that Leigh's attorneys provided ineffective assistance by failing to object to it.

{¶ 24} A police officer's opinion of another witness's truthfulness is inadmissible. *State v. Cooper*, 6th Dist. Lucas No. L-12-1296, 2014-Ohio-1294, ¶ 24, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 122. But any error is mitigated if the victim testifies and is subject to cross-examination. *See State v. Coleman*, 6th Dist. Lucas No. L-15-1056, 2016-Ohio-7335, 72 N.E.3d 1086, ¶ 34. "When the victim testifies, the jury is able to hear the victim's answers, witness her demeanor and judge her credibility completely independent of the other's testimony concerning the veracity of the victim." *State v. Hupp*, 3d Dist. Allen No. 1-08-21, 2009-Ohio-1912, ¶ 20.

{¶ 25} Here, trial counsel should have objected to Deputy Meek's statement that S.M. "seemed truthful." We find, however, that Leigh was not prejudiced by this error. S.M. testified at trial and was cross-examined by Leigh's attorney, so the jury was able to

11.

assess her veracity independently of Deputy Meek's statement. Moreover, we cannot say that the outcome of the trial would have been different but for counsel's failure to object.

{¶ 26} We therefore find that defense counsel's failure to object to Deputy Meek's improper testimony was harmless error. *Coleman* at ¶ 34. As such, Leigh's third assignment of error is not well-taken.

### III. Conclusion

{¶ 27} The October 13, 2016 judgment of the Ottawa County Court of Common Pleas is affirmed. Leigh is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                  _____
                                               JUDGE

Arlene Singer, J

Christine E. Mayle, J.                   _____
CONCUR.                                                 JUDGE

_____
                                               JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.